Slip Op. 07 - 99

# UNITED STATES COURT OF INTERNATIONAL TRADE

|   |   |
|---|---|
| UNITED STATES MAGNESIUM LLC, : | |
| : | |
| Plaintiff, : | |
| : | **Before: MUSGRAVE, Judge** |
| v. : | |
| : | Court No. 06-00422 |
| UNITED STATES, : | |
| : | |
| Defendant. : | |

**OPINION**

[On cross-motions for judgment on an administrative record pursuant to USCIT Rule 56.2, judgment for the defendant.]

Decided: June 29, 2007

*King & Spalding LLP* (*Stephen A. Jones*, *Michael P. Mabile*, and *Elizabeth E. Duall*), for the plaintiff.

*Peter D. Keisler*, Assistant Attorney General, Civil Division, United States Department of Justice, *Jeanne E. Davidson*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, *Patricia M. McCarthy*, Assistant Director, Civil Division, United States Department of Justice (*Stephen C. Tosini*); Office of the Chief Counsel for Import Administration, United States Department of Commerce (*William J. Kovatch, Jr.*), for the defendant.

As briefly described in slip opinion 07-83 (May 24, 2007), which denied a motion to permissively intervene by exporter Tianjin Magnesium International, Ltd. ("TMI"), US Magnesium LLC ("USM") brought this action pursuant to 28 U.S.C. §§ 1581(c) and (i) to contest an aspect of *Pure Magnesium from the People's Republic of China: Final Results of 2004–2005 Antidumping Duty Administrative Review*, 71 Fed. Reg. 61019 (Oct. 17, 2006). USM's complains that the rate assigned by the U.S. Department of Commerce, International Trade Administration ("Commerce") should have been a combination cash deposit rate including TMI's supposedly sole producer/supplier

in the PRC during the period reviewed.  *See* 19 C.F.R. § 351.107.  USM is concerned that without a combination rate, any PRC producer of the subject merchandise can benefit from TMI's zero cash deposit rate by exporting through it, and further that there is, in fact,  the "significant potential" that a large volume of subject merchandise will soon be, if it is not already being, imported into the United States at TMI's zero cash deposit rate to the competitive detriment of USM.

To support the assertion, USM appends to its brief submitted in support of its motion for judgment upon an agency record (pursuant to USCIT Rule 56.2 but not 56.1) an article proclaiming the intention of Shanxi Wenxi Yinguang Magnesium Industry Group Co. Ltd. to begin shipping magnesium to the United States utilizing TMI's zero cash deposit rate.  The article describes TMI as the "sole export sales agent for Wenxi Yinguang, a 50,000-tonne-per-year magnesium producer in northern China."  Pl.'s Br. in Support of Mot. for J. on the Agency R., Attach. 2.  The government moves to strike the attachment as extraneous evidence outside the administrative record.

The standard of review in an action such is this is to "hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence *on the record*, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i) (italics added).  In other words, the Court's review of Commerce's determination is limited to the record of the underlying proceeding.  *Cf. id. with* 19 U.S.C. §§ 1516a(a)(2)(B)(iii) & 1516a(b)(2)(A).  Since the article was published after the final results, the government's motion must be granted.

The government also moves to dismiss Count III of the complaint, a challenge to Commerce's liquidation instructions for failing to reflect without rational explanation a combination cash deposit rate for TMI and its sole PRC producer/supplier of subject merchandise.  *See* Compl.

¶¶ 24-26. USM did not respond to the motion in its reply brief. Since the government appears to obviate a subsection 1581(i) inquiry by acquiescing in overlapping material facts relevant to support USM's identical underlying claim pursuant to subsection(c) jurisdiction, the motion is also granted. *Cf. Miller & Co. v. United States*, 824 F.2d 961, 964 (Fed. Cir. 1987) (finding the remedy of subsection 1581(c) not inadequate to address plaintiff's action).

The government's primary opposition to USM's remaining claim is that USM failed to exhaust administrative remedies on the issue of a combination rate. USM counters that there was no reason to raise the issue in its case brief because Commerce had preliminarily determined TMI's margin to be 89.05 percent and because Commerce may be presumed to have taken care in selecting a surrogate value for dolomite in the preliminary results. *See generally* Pl.'s Reply at 5-6. After the preliminary determination and 13 days before the deadline for filing case briefs, TMI submitted an 846-page document containing new surrogate value information, and USM argues there was no way of predicting which of this voluminous information TMI would use, what arguments TMI would make in its case brief, how TMI might use the new information in its legal arguments, or which information Commerce might find reliable and probative. USM moreover argues that even if it could have anticipated that Commerce might "dramatically" change the preliminary results in response to TMI's arguments, raising the combination rate issue in its rebuttal brief was barred by 19 C.F.R. § 351.309(d)(2) which limits the scope of rebuttal to issues presented in the opposing party's case brief. Thus, USM argues, its situation is similar to that of the petitioner in *Daewoo Electronics Co. v. United States*, 13 CIT 253, 712 F. Supp. 931 (1989), wherein the Court found the petitioner not "procedurally precluded from raising this issue in this judicial review" because it was

"not until the final results of the review became published that the basis for this argument arose." *See id*. at 6 (referencing 13 CIT at 283, 712 F. Supp at 957). Similarly here, USM argues, "the underlying necessity of a combination rate, *i.e.*, to avoid circumvention of the order, did not become an issue until the final results were published." *Id*. at 5.

Examining *Daewoo* and other cases that have considered somewhat analogous situations, the court is persuaded that anti-circumvention did not become a concern until Commerce issued the final results and therefore the doctrine of exhaustion should not be required in this instance. *See* 28 U.S.C. § 2637(d). *See*, *e.g.*, *Hebei Metals & Minerals Im. & Exp. Corp. v. United States*, Slip Op. 04-88 at 19 (USCIT July 19, 2004) (declining to require exhaustion where benchmark for measuring aberrant product value used in calculation of surrogate value was not revealed until final determination); *SKF USA, Inc. v. U.S. Dep't of Commerce*, 15 CIT 152, 159 n.6, 762 F. Supp. 344, 350 n.6 (1991) (declining to require exhaustion where respondent had no chance to contest recalculation of foreign market value because agency did not reveal result of recalculation until final determination); *Al Tech Specialty Steel Corp. v. United States*, 11 CIT 372, 377, 661 F. Supp. 1206, 1210 (1987) (noting that the Court "will assess the practical ability of a party to have its arguments considered by the administrative body").

USM's specific complaint concerns the last sentence of the automatic combination rate policy for NME antidumping investigations, to wit: Commerce "is currently evaluating the extension of these changes in practice to administrative reviews. *Separate-Rates Practice and Application of Combination Rates in Antidumping Investigations Involving Non-Market Countries*, Policy Bulletin 05.1 at 7 (Apr. 5, 2005). USM's apparent complaint is that in the intervening time period since the

Court No. 06-00422                                                                                          Page 5

automatic combination rate policy went into effect for NME antidumping investigations, Commerce has failed to consider extending the policy to NME administrative reviews as well and that it is appropriate to require Commerce to consider the issue in this administrative review. *E.g.*, USM Reply Br. at 10.

The argument appears to proceed from the premise that even in the absence of argument by an interested party, Commerce is obliged to adhere to administrative policy and practice or explain any deviation therefrom. *E.g.*, *Consolidated Bearings Co. v. United States*, 348 F.3d 997 (Fed. Cir. 2003) (remanding for examination of Commerce's liquidation practice regarding resellers not participating in administrative review). As implied above, however, it cannot be concluded that there was a "failure" or lack of attention on Commerce's part to address the combination rate issue in the context of this administrative review because the issue was not directly pressed by USM for consideration, and for the time being Commerce has approached the combination rate issue in reviews (new shipper or administrative) of exporter/producer combinations from NMEs on a case-by-case basis when the issue has been raised, rather than automatically. *E.g.*, *Honey From Argentina: Preliminary Results of New Shipper Review*, 71 Fed. Reg. 67850 (Nov. 24, 2006); *Freshwater Crawfish Tail Meat from the People's Republic of China: Notice of Final Results of Antidumping Duty Administrative Review*, 71 Fed. Reg. 7013 (Feb. 10, 2006) (and accompanying decision memorandum at comment 2); *Final Results of Antidumping Duty Administrative Review: Certain In-Shell Raw Pistachios From Iran*, 70 Fed. Reg. 7470 (Feb. 14, 2005) (and accompanying decision memorandum at comment 2, applying a combination rate albeit due to "unique circumstances"). *Cf. Certain In-shell Roasted Pistachios from the Islamic Republic of Iran: Final*

Court No. 06-00422                                                                                                        Page 6

*Results of Countervailing Duty Administrative Review*, 71 Fed. Reg. 66165 (Nov. 13, 2006); *id.* at 37056 (June 29, 2006). Commerce's exercise of such discretion is in line with 19 U.S.C. § 1675(a)(2)(C), which merely provides that the final results of an administrative review "shall be the basis for . . . deposits of estimated duties" and leaves that matter open to interpretation. *Cf.* 19 C.F.R. § 351.107(b)(1)(i) ("the Secretary *may* establish a 'combination' cash deposit rate for each combination of the exporter and its supplying producer(s)"). *See also Antidumping Duties; Countervailing Duties*, 62 Fed. Reg. 27296, 27303 (May 19, 1997) ("it is appropriate in some instances to establish rates for exporter/producer combinations").

This court has no comment on the wisdom of such interpretation, but USM argues that there is no rational basis for case-by-case analysis in NME administrative reviews but not in investigations and that Commerce has never explained why the proper application of combination rates should require such a distinction. USM argues that without such an explanation, Commerce's "failure" to even consider applying a combination rate in this review cannot be upheld and Commerce should thus at least be required consider its application in this instance. *See*, *e.g.*, Pl.'s Reply at 10.

USM's points may be well taken, but in the end they are unavailing to support an order of remand. Except for the fact that Commerce did not consider applying a combination cash deposit rate for TMI, USM does not contest that the administrative record is otherwise supported by substantial evidence. At this point, the not-in-accordance-with-law prong of the standard of review applies, and in that regard the relevant policy bulletin, while meriting "respect," lacks the force of law to "legally" bind Commerce on its face. *See Christensen v. Harris County*, 529 U.S. 576, 587 (2000); *Tung Mung Development Co. v. United States*, 25 CIT 752, 762 (2001). Even if Commerce

were to be "legally" bound by it, the promise by when to consider extending automatic application of combination rates to administrative reviews was open ended. And even if the passage of two years may be said to "compel" a formal declaration of whether Commerce will or will not extend automatic application of combination rates to administrative reviews, the outcome is no less a matter within Commerce's discretion. *See*, *e.g.*, *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 65 (2004) (an agency may be "compelled by law to act within a certain time period" but a court "has no power to specify what the action must be"). In short, there appears to be no basis for remand of this matter pursuant to the standard of review by which it must be adjudged.[1]

*Conclusion*

Commerce has "broad" discretion to implement U.S. trade laws, *e.g.*, *Oregon Steel Mills Inc. v. United States*, 862 F.2d 1541, 1544 (Fed. Cir. 1988), and those neither mandate the use of combination cash deposit rates in administrative reviews nor mandate any deadlines for establishing policy with respect thereto. Commerce has not indicated by when it will more "formally" consider extending automatic combination rate policy to administrative reviews, and the court may not hold Commerce accountable to consider extending its automatic combination cash deposit rate policy to

---

[1] As an aside, neither the Administrative Procedure Act (APA), 5 U.S.C. §§ 701, 706, nor the Mandamus and Venue Act (MVA), 28 U.S.C. § 1361, would provide a basis to remedy USM's concern. Under the APA, a subsection 706(1) claim "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it *is required* to take." *Norton*, 542 U.S. at 64 (italics in original). Likewise, MVA jurisdiction is limited to actions to compel the performance by a governmental office or employee of ministerial duties that are mandated by law. *See Pittston Coal Group v. Sebben*, 488 U.S. 105 (1988). The MVA requires exhaustion of administrative remedies, and even then it must also be shown that a "clear non-discretionary duty" was owed by the agency. *Humane Society of the United States v. Clinton*, 236 F.3d 1320, 1328-30 (Fed. Cir. 2001) (denying mandamus due to "broad" executive discretion over anti-driftnet policy). In any case, mandamus may not be utilized to "influence" the federal officer's exercise of discretion. *See Pittston*.

administrative reviews of non-market economies generally by a date certain or otherwise, let alone require Commerce to consider applying a combination cash deposit rate in the administrative review at bar.

 USM's action must therefore be dismissed and its motion for oral argument rendered moot.

           /s/ R. Kenton Musgrave
           R. KENTON MUSGRAVE, JUDGE

Dated: June 29, 2007
   New York, New York

# *UNITED STATES COURT OF INTERNATIONAL TRADE*

|  |  |
|---|---|
| UNITED STATES MAGNESIUM LLC, : | |
| : | |
| Plaintiff, : | **Before: MUSGRAVE, Judge** |
| : | |
| v. : | Court No. 06-00422 |
| : | |
| UNITED STATES, : | |
| : | |
| Defendant. : | |

**JUDGMENT**

This action having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; now therefore, in conformity with said decision, it is

**ORDERED, ADJUDGED and DECREED** that plaintiff's motion for summary judgment be, and it hereby is, denied; and it is further

**ORDERED, ADJUDGED and DECREED** that defendant's cross motion for summary judgment be, and it hereby is, granted; and it is further

**ORDERED, ADJUDGED and DECREED** that this action be, and it hereby is, dismissed.

                                                                        /s/  R. Kenton Musgrave
                                                                      R.  KENTON MUSGRAVE, JUDGE

Dated: June 29, 2007
      New York, New York

## NOTICE OF ENTRY AND SERVICE

      This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

      Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

                or

      Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

                                                        Tina Potuto Kimble
                                                          Clerk of the Court

Date: _____      By: _____
                                                                                             Deputy Clerk